Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 514 | **DATE** | 3/28/2002 |
| **CASE TITLE** | CASTER WILLIAMS vs. METROPLITAN WATER RECLAMATION DIST. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] It is hereby ordered that this Court grants the Defendant's motion for summary judgment [20-1] as to Plaintiff's Count I. Status hearing is set for 4/17/02 at 9:30 a.m. as to Williams' retaliation claim, Count II.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 28 2002 date docketed | 31 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| CASTER WILLIAMS, | )<br>)<br>) No. 01 C 0514<br>) Judge Ronald A. Guzman<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>METROPOLITAN WATER )<br>RECLAMATION DISTRICT OF )<br>GREATER CHICAGO, )<br>)<br>Defendants. ) |

## MEMORANDUM OPINION AND ORDER

Pending is the Defendant Metropolitan Water Reclamation District's Motion for Summary Judgment under Rule 56 of the Federal Code of Civil Procedure. For the following reasons Summary Judgment is granted as to Count I of the Plaintiff's Complaint.

## BACKGROUND FACTS

Caster Williams, has been employed by Defendant as a Maintenance Laborer B ("MLB") at its Kirie Water Reclamation Plant ("Kirie"), since November 27, 1996. Defendant Metropolitan Water Reclamation District of Greater Chicago ("District") is a unit of local government that provides sewage treatment and related services for an area covering most of Cook County. Williams, who is black, claims that throughout his employment with the District, he has been subjected to racial slurs and discriminatory treatment.

1

Williams was responsible for janitorial duties in treatment plants, pumping stations, and office areas. Ed Cameron was Plant Manager at Kirie from June 30, 1997 until August 15, 1999. Leo Rakowski, Jr. was Plant Manager at Kirie beginning in August 1999. Williams's immediate supervisor from May 1997 to the present has been Rose Bichkoff, Laborer Foreman, and her supervisor during that time has been Michael Shukin, Engineering Technician V, Section Supervisor.

Williams first started to believe he was discriminated against shortly after Ms. Bichkoff became Laborer Foreman.[1] Williams alleges that two machinists greeted him and other black laborer as "you boys" starting around 1997. The tradesmen only called the black laborers "boys." Another black laborer, like Williams, stated that he heard that some of the tradesmen told Ms. Bichkoff, "Those boys complain too much" and that they were "pussies" with regard to a tunnel project that needed to be done. It is disputed as to how long the "boys" comments continued, however, taking the facts in the light most favorable to Williams, the court will assume the "boys" comments continued through 2000.

Williams alleges that part of the discriminatory harassment he suffered derived from his immediate supervisor, Ms. Bichkoff, in verbally disciplining him for wearing his hard hat backwards when white employees openly wore their hard hats backwards for extended periods of time and directly in front of the Plant Manager, Leo Rakowski, without consequence. Williams also alleges that the discriminatory harassment he suffered was due in part to the fact that he has been verbally warned for wearing gym shoes while a number of white employees governed by the same purported shoe safety

---

[1] Williams also complains that in Ms. Bichkoff's office at work there is a picture that racially depicts five white cats and a gray cat saying "Nobody is perfect."

2

requirements continued to freely wear gym shoes daily without consequence. The Plaintiff also complains that Ms. Bichkoff monitored him by giving him a specific list of duties that no other MLB employee had been given.

In addition, Williams alleges that the discriminatory harassment he endured was due in part to the fact that he was restricted from parking in certain areas that were never designated as restricted by any sign or written rule, and because other white District employees were permitted to park in the places and in the manner from which Williams was prohibited.[2]

Williams sets forth in his testimony that the following events occurred and therefore support his claim under Title VII.

1. In December 1999 or January 2000, Williams put a note on Mr. Shukin's desk telling him to clean up the sink and the shelf above the sink when he rinses his dishes. Williams alleges that later that day Mr. Rakowski threw the note at him, asked him what the hell it was and what his job is, and when Williams responded "to clean up," said, "Well then, I don't care if someone shits on the floor, that's your job. Whatever it is just do it."

2. In January 2000, Mr. Shukin found Williams lying down on the bench in the men's locker room with his eyes wide open for a few minutes because he was not feeling well; when Mr. Shukin asked whether he needed to go home, Williams responded, "Maybe so." After this Williams was restricted from using the men's locker room. He was to use another bathroom around the corner from the men's locker room.

3. On January 26, 2000, Mr. Rakowski convened a meeting with the supervisors and laborers at the Kirie Plant to clear the air of some problems between the supervisors, Ms. Bichkoff and Mr. Shukin, and the black and non-black laborers. During the meeting, Mr. Rakowski called the laborers a bunch of crybabies and said, "Do the job and stop

---

[2] There is no evidence in the record showing that this was the case. This is based on Williams' subjective perception of the situation. Furthermore, this is irrelevant because the parking lot is not directly related to work or Williams' work performance.

3

complaining, and if you don't like it, just quit; nobody's keeping you here."

4. On October 23, 2000, while Williams was vacuuming, Mr. Rakowski pointed out a piece of paper in his office that had been on the floor for two days. Williams responded, "If it was trash it would have been in the can." Mr. Rakowski responded, "Just because I missed the can doesn't mean you can't pick it up. You're really pullin' my chain." He told Williams to pick up the paper. Williams continued vacuuming. Mr. Rakowski said, "I don't know what you're trying to pull, but if you wanna lose your job, keep it up." Williams left. Mr. Rakowski later said, "You're not gonna pick it up, huh?" Williams said, "Later when I empty trash today" and left again without picking up the paper.

5. Later, sometime after December 2000 Williams addressed his concern to the Assistant Chief Engineer, William Munch, that his performance rating ending in November 1999 was evaluated to substandard because of Plaintiff's race. Williams was addressing his concerns of racial harassment directly to William Munch, the Assistant Chief Engineer in charge of the Kirie Plant when Williams alleges that Munch said, "When I was Plant Manager out here before, it wasn't the Italians that I had a problem with, it was you blacks." Then Munch continued, "First it was the Italians, now it's you blacks." Williams did not report this alleged comment.

Williams has taken limited steps to remedy his problems with his supervisors. Williams alleges that he complained to Mr. Shukin about Ms. Bichkoff "checking up on me and moving stuff around in my work area" and, a few months before his prior immediate supervisor transferred from Kirie, he complained to him about being called "boys" and being told to wear his hard hat properly. Mr. Cameron, his supervisor at the time, told Williams to file a discrimination complaint with the Defendant's EEO Officer if he felt he was being harassed. Also, Mr. Cameron distributed a memo in response to Williams's complaints, stating that harassment is not permitted in the workplace.

In an effort to address harassment in the workplace, the Defendant adopted its GS Directive 98-6, Receipt and Processing of Informal Complaints of Discrimination, on

4

August 12, 1998. Ms. Frances Wilkins, the Defendant's Equal Employment Opportunity and Training Manager administered this policy and procedure. It was mailed to all employees at the time of its issuance. Williams filed no complaints with Ms. Wilkins under GS Directive 98-6.

Defendant adopted its GS Directive 00-1, Receipt and Processing of Informal Complaints of Harassment, on March 29, 2000. Frances Wilkins, Defendant's Equal Employment Opportunity and Training Manager administer this policy and procedure. It was mailed to all employees at the time of its issuance. Williams filed one complaint with Ms. Wilkins under GS Directive 00-1, on October 23, 2000, regarding three specific incidents that occurred in October 2000. He also generally claimed to have been "continuously harassed " since Bichkoff became Laborer Foreman.

Ms. Wilkins investigated the complaint, and in her report issued on June 25, 2000, Ms. Wilkins concluded "neither the words nor deeds of Mr. Williams' supervisors constituted unlawful harassment that created a hostile work environment or interfered with his work performance because of his race, Black."

Williams filed a charge of race discrimination with the EEOC on May 8, 2000. Williams filed a second charge of race discrimination with the EEOC on October 26, 2000. Williams feels he is disrespected and treated like a slave by his supervisors at the Kirie Plant causing him to suffer sleeplessness and headaches under the stress of the conditions he has been subjected.

# DISCUSSION

Summary Judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material facts and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 325.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Fed. R. Civ. P. 56. "To accomplish this, the facts must

be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not "a disfavored procedural shortcut;" rather it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The parties' arguments will be evaluated in accordance with these summary judgment standards.

### Hostile Work Environment

Title VII of the Civil Rights Act states that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such a individual's race..." 42 U.S.C. §2000-2(a)(1). However "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Circumstances in considering whether a workplace is a hostile environment might include the frequency and severity of the discriminatory conduct, whether the conduct is humiliating or physically threatening, whether it is a "mere offensive utterance," and whether it affects and interferes with work performance. *Id.* at 23.

Under the law of the Seventh Circuit, the impact of the harassment upon Williams's work environment is measured both objectively and subjectively. *Hostetler v. Quality Dining, Inc.*, 218 F. 3d 798, 807 (7th Cir. 2000). The work environment cannot be described as "hostile" for purposes of Title VII unless a reasonable person would find

it offensive and the Plaintiff actually perceived it as such. *Id.* at 807 (citing *Harris*, 510 U.S. at 21-22). The Court will look to the totality of the circumstances to decide if the work place is a hostile work environment. *Harris*, 510 U.S. at 23. The harassment must be sufficiently severe so that a rational trier of fact could find that it had actually changed the conditions of Williams's workplace. *Silk v. City of Chicago*, 194 F. 3d 788, 804 (7th Cir. 1999).

Though the record shows that Castor Williams perceived the environment to be discriminatory, thereby, satisfying the subjective prong of the test, Williams must still satisfy the objective prong of the test to survive summary judgment. Williams must show that a reasonable person would have found the work environment to be sufficiently hostile. This court finds that Williams cannot meet that burden under the law of the Seventh Circuit. The only evidence Williams has set forth to support his allegations that the conduct of his supervisor was racially motivated is Williams' own perception that he was treated harsher and disciplined more often than other white employees. His testimony does not support these allegations and his testimony is subjective in nature. Comments relating to which gear (hard hats and gym shoes) should be worn at the workplace do not raise a material fact as to race.[3]

Likewise, attempts made by the supervisor, Ms. Bichkoff, to monitor his work with specific lists and restrictions as to which bathroom to use (as opposed to the locker room itself) demonstrate supervisory attempts to improve Williams' performance. These supervisory attempts were needed because there were complaints about his work and

---

[3] Furthermore, there is evidence in the record that a non-black MLB (same position as Williams) was told not to wear gym shoes once and twice but stopped when Ms. Bichkoff told him not to.

8

there was atleast one occasion where his supervisor was looking for him and eventually found him resting in the locker room while on duty.

The other instances that Williams' raises, being told to pick up the garbage in Mr. Rakowski's office and being called "crybabies" are not connected by the evidence to race based animus. The "crybabies" comment was made to all the laborers, black and non-black. And the comment in Mr. Rakowski's office was part of his janitorial duty as MLB. There are many workplaces where supervisors are difficult, harsh or unfair, but such circumstances are not a basis for a Title VII claim.

While comments pertaining directly to Williams' race such as the comment "When I was Plant Manager out here before, it wasn't the Italians that I had a problem with, it was you blacks" is undoubtedly discriminatory and offensive, it is not so severe or pervasive that a jury would find that it changed Williams' condition at work. Looking to the factors set out in *Harris*, this was an isolated incident, it was not threatening, and it is not so severe as to affect an employee's job performance and therefore would not be actionable under Title VII.

Comments made to Williams and other black laborers in referring to them as "boys" and "pussies" are an example of co-worker harassment. [4] Employer liability with co-worker harassment has a different standard. Instead of the Plaintiff having to show a hostile work environment, the Plaintiff has to show that the defendant was negligent in handling the reported cases of harassment. "An employer is negligent...if it knew or should have known about the conduct and failed to stop it. *Burlington Industries, Inc., v.*

---

[5] The record shows that another black MLB co-worker (Davis) heard one of the tradesmen saying "those boys complain too much" and that they were "pussies" with regard to a tunnel project that needed to be done. Davis specifically testifies that the alleged "pussies" incident did not involve the Plaintiff, Williams. Because of this, this comment does not have any relevance to the case at bar.

9

*Ellerth*, 524 U.S. 742, 759 (1998). See also *Faragher v. City of Bocaraton*, 524 U.S. 775 (1998). The *Ellerth/Faragher* affirmative defense places the burden on the employer by requiring that an employer establish that: (1) it took both preventive and corrective steps to address sexual harassment: and (2) that the employee failed to take advantage of available preventive or corrective measures. See *Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000). In this case, the "boys" comments were reported to Mr. Cameron, at which time Williams was told that he could file a complaint with the EEO officer. Also at that time, Mr. Cameron sent out a memorandum to all the supervisors detailing the District's view on harassment in the workplace. This is enough evidence to show that the Defendant was not negligent in handling the harassment from other co-workers.

Finally, there is no evidence that Williams put the employer "on notice" as to most of the alleged events and comments.[5] The record shows that the Defendant has adopted GS Directive 98-6 in August 1998 and GS Directive 00-1 in March 2000. Williams did not file any complaints under the GS Directive 98-6, however he did file a compliant under the GS Directive 00-1, which was administered by Frances Wilkins, the Defendant's Equal Employment Opportunity and Training Manager. He contacted her on October 23, 2000 regarding three specific instances that occurred in October 2000. He also generally complained about his immediate supervisor Ms. Bichkoff. After Ms. Wilkins investigated the complaint she concluded in June 2001 that there was not a hostile work environment and no corrective action was recommended.

---

[5] Many of Williams' claims are time barred. All alleged incidents that occurred before the 300-day limitation of an EEOC filing are not to be considered. *Hardin v. S.C. Johnson & Son, Inc.* 167 F.3d 340, 344-345 (7th Cir. 1999). Therefore all allegations that relate to conduct before July 13, 1999 are untimely and cannot form a basis for his claims.

Williams only reported three specific instances that occurred in October 2000, and those were investigated and there is no evidence that the employer's investigation was not reasonable or not in good faith. Furthermore, the totality of Williams' complaint fails to establish a hostile work environment.

## CONCLUSION

Based on the foregoing reasons this Court grants the Defendant's Motion for Summary Judgment as to Plaintiff's Count I. The Court will set a date and hold a status hearing as to Williams's retaliation claim, Count II.

SO ORDERED                                    ENTERED:

                                              _____
                                              HON. RONALD A. GUZMAN
                                              United States Judge